UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gearhead Productions, Inc., | No. 2:23-cv-02331-KJM-JDP |
| Plaintiff, | ORDER |
| v. | |
| Gearhead Outfitters, Inc., | |
| Defendant. | |

In this trademark infringement action, defendant Gearhead Outfitters, Inc. moves to dismiss plaintiff Gearhead Productions, Inc.'s first amended complaint for failure to state a claim under Rule 12(b)(6), or alternatively, to strike portions of the complaint under Rule 12(f). For the reasons below, the court **denies** the motion.

**I.    BACKGROUND**

The court assumes the following factual allegations are true and construes them in the light most favorable to plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Founded in 1993, plaintiff is a California corporation that "offers inter alia, on-line retail services, clothing apparel, stickers, printed matter, accessories, sound recordings, electronic publication, and online journals under the Trademark GEARHEAD." First Am. Compl. (FAC) ¶¶ 6–7. Defendant Gearhead Outfitters, Inc. is an Arkansas corporation and "retailer of clothes and various goods

1  related to outdoor activities." *Id.* ¶ 9.  According to defendant's website, it was founded in 1997.
2  FAC Ex. I, ECF No. 11-2.[1]
3      Plaintiff registered its trademark, "GEARHEAD," in 2005 and is the owner of that mark.
4  FAC ¶¶ 11–12.  Among other classes of goods, plaintiff registered GEARHEAD in connection
5  with "'[s]hirts, sweatshirts, jackets, headwear; infant wear; cloth bibs; children's clothing,
6  namely, shirts, shorts, tops, dresses, jackets and sweatshirts' in Class 025[.]"  *Id.* ¶ 12. Since
7  1993, plaintiff has extensively and continuously used GEARHEAD to build its fashion, music
8  and lifestyle brand.  *Id.* ¶ 13.  GEARHEAD has become a "recognized and relied upon" mark in
9  part due to "extensive and costly advertising, marketing, and promotion," and through "extensive
10 product placement in high profile media."  *Id.* ¶¶ 17–18.  GEARHEAD has become a valuable
11 asset and represents plaintiff's goodwill and reputation, its business activities, and its goods.  *Id.*
12 ¶ 19.
13     Plaintiff offers its goods and services through its website: https://www.gearheadhq.com.
14 *Id.* ¶ 14.  However, a Google search of "gearheadhq" leads to defendant's website as the first
15 recommended site.  *Id.* ¶ 15; FAC Ex. E.  Defendant also offers and sells its goods through its
16 website using the term "Gearhead."  FAC ¶¶ 20–24; Exs. A, F.  It offers and sells clothing from
17 various brands, and also sells clothing bearing the term "Gearhead."  *Id.* ¶¶ 23–26; FAC Exs. G,
18 H, I.  Defendant also runs several physical stores named "Gearhead" or with names incorporating
19 "Gearhead."  FAC ¶ 27; FAC Ex. J.
20     Plaintiff alleges defendant has unsuccessfully attempted to register trademarks that were
21 similar to GEARHEAD.  FAC ¶¶ 29–33.  In 2014, defendant filed a trademark application for
22 "GEARHEAD OUTFITTERS" for shirts, hats, cups and other materials included in Class 025.
23 *Id.* ¶ 30; FAC Ex. K.  Plaintiff alleges the trademark application "was refused registration, and
24 ultimately abandoned, under Trademark Act Section 2(d), 15 U.S.C. §1052(d), as likely to cause
25 confusion" with GEARHEAD.  FAC ¶ 31.  Defendant attempted again to register "GEARHEAD

---

[1] The court may consider materials attached to the complaint without converting the instant motion into a motion for summary judgment.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

2

1  OUTFITTERS" for use with shirts in Class 025 in 2015, *id.* ¶ 32; FAC Ex. L, but that application
2  was also "refused registration, and ultimately abandoned, under Trademark Act Section 2(d),
3  15 U.S.C. §1052(d) as likely to cause confusion" with GEARHEAD, FAC ¶ 33.

4  Defendant ceased to offer goods and services under the term "Gearhead" from 2015 to
5  2018. *Id.* ¶ 34. Plaintiff believed defendant's cessation of the use of "Gearhead" was in response
6  to the parties' communications prior to 2015. *Id.* ¶ 35. However, on September 2, 2020,
7  defendant again filed a trademark application for "GEARHEAD OUTFITTERS" for online retail
8  services featuring others' outdoor and travel equipment and related goods in Class 035. *Id.* ¶ 36.
9  The application, unlike the previous one, did not specify that the mark would be used with
10 clothing. *Id.* ¶ 37. After filing a 90-day extension of time, plaintiff filed a petition to oppose the
11 registration with the Trademark Trial and Appeal Board on August 3, 2021. *Id.* ¶ 38; FAC Ex. N.
12 On March 17, 2023, after noting defendant had filed an express abandonment of its application,
13 the Board entered judgment against defendant, sustained plaintiff's opposition, and refused
14 defendant's registration. *Id.* ¶ 39; FAC Ex. O.

15 After plaintiff filed its 90-day extension of time to oppose the registration, defendant
16 removed the products implicated by the opposition from its Instagram account. FAC ¶ 40.
17 Plaintiff believed the removal was in response to plaintiff's actions to oppose defendant's
18 application and believed defendant would "definitively stop" its allegedly infringing actions. *Id.*
19 ¶ 41. However, despite further communications between the parties, defendant has continued its
20 allegedly infringing actions. *Id.* ¶ 42.

21 Plaintiff alleges defendant infringes the GEARHEAD mark when it offers and sells
22 products bearing the terms "Gearhead" and "Gearhead Outfitters" and when it uses the term
23 "Gearhead Outfitters" to sell products covered by the GEARHEAD mark. *Id.* ¶¶ 43–48. Plaintiff
24 also alleges "[d]efendant's use of the term 'Gearhead' in relation with clothes is likely to confuse
25 a reasonable consumer," and defendant is "aware of several instances of actual confusion," *id.*
26 ¶¶ 49–50, although it does not actually describe any of these instances of confusion. Defendant
27 knew or should have known its use of the term "Gearhead" or "Gearhead Outfitters" was
28 misleading and likely to cause confusion with plaintiff's mark. *Id.* ¶ 52. Due to defendant's

3

actions, customers that would otherwise have selected plaintiff's products have purchased defendant's products. *Id.* ¶ 53. Defendant's actions have resulted in "diverting and poaching customers" from plaintiff's to defendant's website and stores. *Id.* ¶ 54.

Plaintiff asserts the following five claims against defendant:

1. Direct Trademark Infringement under Section 32 of the Lanham Act;

2. Direct Trademark Infringement, False Designation of Origin and Unfair Competition under Section 43(a) of the Lanham Act;

3. Common Law Trademark Infringement;

4. Common Law Unfair Competition; and

5. Unfair Competition under California Business and Professions Code section 17200, et seq.

FAC ¶¶ 56–84; *see* Compl., ECF No. 1. Plaintiff seeks injunctive relief and damages. *See* FAC at 13–14 (Prayer for Relief).[2] Defendant argues plaintiff's claims are barred under the equitable principle of laches and moves to dismiss the claims against it on that ground. Mot. at 2, ECF No. 14. Alternatively, it moves to dismiss plaintiff's claims regarding defendant's advertisement and sale of third-party branded apparel for failure to state a claim upon which relief can be granted. *Id.* Alternatively, it moves to strike the allegations related to defendant's advertisement and sale of third-party branded apparel and "Gearhead Outfitters" marked apparel. *Id.* Plaintiff opposes, Opp'n, ECF No. 16, and defendant has replied, Reply, ECF No. 19. The court submitted the motion without oral arguments. *See* Min. Order, ECF No. 22.

**II.     LEGAL STANDARD**

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In response, the court begins by assuming the complaint's factual allegations are true and draws all reasonable inferences in favor of the nonmoving party. *Iqbal*, 556 U.S. at 678–79 (citation omitted). The court also construes all factual allegations "in the light most favorable to the nonmoving party." *Steinle v. City of San Francisco*, 919 F.3d

---

[2] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

4

1154, 1160 (9th Cir. 2019) (citation omitted). The court then determines whether those factual allegations "plausibly give rise to an entitlement to relief" under Rule 8. *Iqbal*, 556 U.S. at 679.

### III.  LACHES

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (internal marks and citation omitted). Laches is a valid defense to claims under the Lanham Act. *Id.* Laches and the statute of limitations are distinct defenses. *Id.* However, because the Lanham Act does not have a statute of limitations, courts look to analogous state statutes of limitations periods to determine whether laches applies. *Id.* at 835–37. If a claim filed under the Lanham Act "is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable; if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit." *Id.* at 837. The limitation period begins when the plaintiff knew or should have known about its cause of action. *Id.* at 838.

Plaintiff filed this action in 2023, more than eight years after plaintiff alleges it first communicated with defendant regarding defendant's alleged infringing activities. *See* FAC ¶ 35. Between 2015 and 2018, plaintiff alleges it believed defendant had ceased its infringing activities. *Id.* ¶¶ 34–35. Plaintiff also alleges it believed defendant's infringing actions "would definitely stop" after plaintiff had filed its request for an extension of time to oppose defendant's 2020 trademark application and after defendant removed products implicated by that opposition on its social media account. *Id.* ¶¶ 36–41. The complaint does not specify when defendant resumed its infringing activities. *See id.* ¶ 42. Defendant argues the laches period began prior to 2015, when plaintiff first communicated with defendant regarding the alleged infringing activities. *See* Mem. at 15. Plaintiff, in opposition, argues "Defendant's argument about how long it took Plaintiff to file a lawsuit against Defendant is irrelevant" because it has alleged an exception to the defense of laches, namely willfulness. Opp'n at 12. In making this argument, plaintiff does not explicitly address when the laches clock began to run. *Cf. Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 953 (9th Cir. 2001) (addressing arguments that clock on laches stopped). If the laches period began

5

following plaintiff's discovery of defendant's renewed infringing activities after it opposed defendant's trademark application in 2021, and the Trademark Trial and Appeal Board issued its decision in 2023, *see* FAC ¶¶ 39–42, plaintiff's action would be within the two, three and four-year statute of limitations courts have applied in trademark infringement cases. *See, e.g., Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1189 (N.D. Cal. 2015) (collecting cases); *Derek & Constance Lee Corp. v. Kim Seng Co.*, 391 F. App'x 627, 628 n.1 (9th Cir. 2010) (unpublished) (noting Ninth Circuit has considered both "the three-year limitations period for fraud as provided in California Civil Procedure Code § 338(d), and the four-year limitations period for California trademark infringement as provided in California Business and Professions Code § 17208, to be analogous limitations periods for Lanham Act claims." (internal citations omitted)). However, if the laches period began prior to 2015, as defendant argues, the presumption of laches applies. *See Jarrow Formulas*, 304 F.3d at 838.

  For the purpose of this motion, the court must assume the factual allegations in the complaint are true and must construe them in the light most favorable to plaintiff. If plaintiff believed defendant's temporary cessation of its infringing activities "would definitely stop," after plaintiff opposed defendant's trademark application and after multiple communications, it is reasonable to infer plaintiff did not believe it had a valid cause of action until 2023. *See, e.g., Posung Yoon v. Chan Ho Lee*, No. 11-611, 2013 WL 12131727, at *6 (C.D. Cal. Feb. 4, 2013) ("The Court cannot say as a matter of law that Plaintiff knew or should have known of his causes of action in 2006 when [Defendant's] conduct could have reasonably convinced Plaintiff that he had no causes of action to assert because they were complying with his demands."); *FLIR Sys., Inc. v. Sierra Media, Inc.*, 903 F. Supp. 2d 1120, 1148 (D. Or. 2012) (finding there was dispute of fact on whether claims were filed within limitations period because defendant's response to plaintiff's cease and desist letter "could reasonably be interpreted as an agreement to stop all allegedly infringing use"; collecting cases). Accordingly, based on the pleadings, there is a strong inference laches does not apply.

  As the party asserting laches, defendant must still show "(1) [plaintiff's] delay in filing suit was unreasonable, and (2) [defendant] would suffer prejudice caused by the delay if the suit

were to continue." *Jarrow Formulas*, 304 F.3d at 838 (citing *Danjaq*, 263 F.3d at 951). The reasonableness of delay is determined by balancing six factors: "(1) strength and value of the trademark rights asserted; (2) plaintiff's diligence in enforcing [its rights]; (3) harm to senior user if relief is denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by the junior user because of senior user's delay." *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006). In the laches context, there are two generally recognized forms of prejudice: 1) evidentiary prejudice, which "includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded, or who have died," and 2) expectations-based prejudice, which "occurs when a defendant 'took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly.'" *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012) (quoting *Danjaq*, 263 F.3d at 955).

"A complaint may be dismissed for failure to state a claim where the defense of laches is apparent from the face of the complaint." *See Landrum v. Tyson*, No. 10-4795, 2011 WL 13217114, at *1 (C.D. Cal. May 16, 2011). However, "[b]ecause the application of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution [even] by summary judgment." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000). "At the motion-to-dismiss phase, the obstacle to asserting a successful laches defense is even greater because the defendant must rely exclusively upon the factual allegations set forth in the complaint[.]" *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 128 (2008).

Here, defendant's laches defense cannot be adjudicated on the pleadings. *See, e.g.*, *id.* This is not a case where plaintiff has provided no explanation for its delay. *Cf. Landrum*, 2011 WL 13217114, at *2. Rather, plaintiff has alleged GEARHEAD is a strong and valuable mark that has been used for over twenty years. *See* FAC ¶¶ 12–13, 18–19. Plaintiff has diligently enforced its mark by communicating with defendant regarding the use of the term "gearhead" and by filing an opposition to defendant's trademark registration application. *Id.* ¶¶ 34, 38–42. It did not file suit because it reasonably believed the record of proceedings before the Patent and

1  Trademark Office and informal communications were sufficient to indicate defendant had ceased
2  infringing its trademark. *See, e.g.*, *id.* ¶¶ 30–41. There is nothing in the complaint suggesting
3  plaintiff knew or should have known defendant had not ceased its infringing activities in the
4  interim. Plaintiff also alleges it will continue to be harmed by defendant's alleged infringement,
5  *see, e.g.*, *id.* ¶¶ 54, 58, 65, and that defendant has continued its infringing activities despite
6  knowing about plaintiff's trademark, *see id.* ¶ 52. The parties are also competitors in the retail
7  clothing market. *id.* ¶¶ 53–54. Although there is a presumption laches applies based on the length
8  of the delay, and defendant argues it has been prejudiced by plaintiff's delay, Mem. at 16, ECF
9  No. 14-1, the court finds laches is not grounds for dismissal at this state; rather, the
10 reasonableness of the delay given all the circumstances is better resolved based on a full factual
11 record.

12         Additionally, defendant has not shown prejudice is apparent from the face of the
13 complaint. Defendant argues it was prejudiced from plaintiff's delay in suing because it had built
14 a successful business over the years, including by securing eighteen stores across five states.
15 Mem. at 16. "[T]he prejudice inquiry is concerned with actions a defendant took during the
16 plaintiff's delay in bringing suit—not all the actions it took in relation to the use of a mark." *Eat*
17 *Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1119 (9th Cir. 2018). From the
18 complaint, it is unclear what actions defendant took after plaintiff learned of its continued
19 infringement actions, such that defendant was prejudiced by plaintiff's alleged delay in suing.
20 *See id.* at 1120 (district court's prejudice finding was erroneous because its reliance on evidence
21 of expectation-based prejudice was not limited to actions the defendant took during the period the
22 plaintiff delayed suit). Because the defense of laches is not apparent from the face of the
23 complaint, the court denies defendant's motion to dismiss on this ground.

24 **IV.    TRADEMARK INFRINGEMENT**

25         "To prevail on its Lanham Act trademark claim, a plaintiff must prove: (1) that it has a
26 protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to
27 cause consumer confusion." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202 (9th Cir.
28 2012) (citation and marks omitted)). In determining the likelihood of confusion, courts consider

8

eight factors: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)).

Defendant argues plaintiff has not sufficiently alleged likelihood of confusion with regard to its advertisement and sale of third-party branded apparel. Mem. at 16–24; Reply at 13–15. In general, dismissal of a complaint on grounds of likelihood of confusion is "highly unusual," though not unprecedented. *Dita, Inc. v. Mendez*, No. 10-6277, 2010 WL 5140855, at *5 (C.D. Cal. Dec. 14, 2010) (collecting authority). This is because the likelihood of confusion "is based on a non-exhaustive, multi-factor, fact-intensive inquiry," such that the Ninth Circuit has even "cautioned against granting summary judgment in these cases." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016). Lower courts have similarly declined to make factual determinations regarding likelihood of confusion at the pleading stage. *See, e.g.*, *Mastro's Rests. LLC v. Dominick Grp. LLC*, No. 11-1996, 2012 WL 2091535, at *5 (D. Ariz. June 11, 2012) (collecting cases). This is because, at the pleading stage, plaintiff is not required to prove the likelihood of confusion; rather, all plaintiff needs to do is allege facts supporting its allegations as to the likelihood of confusion. *See Yaros v. Kimberly Clark Corp.*, No. 17-1159, 2018 WL 3729520, at *6 (S.D. Cal. Aug. 6, 2018).

Here, plaintiff has sufficiently alleged likelihood of confusion. Plaintiff has alleged it has a valid protectible mark. FAC ¶ 12. It also has alleged defendant's use of the mark is likely to cause confusion. *Id.* ¶¶ 49–50, 52, 58, 65, 82. The mark "GEARHEAD" and terms "gearhead" and "gearhead outfitters" all use the word "gearhead." Plaintiff has used and marketed its mark for over 20 years, and it has "become recognized and relied upon by the relevant industry and purchasing public[.]" FAC ¶¶ 12–14, 17–18. Plaintiff alleges both parties engage in the sale of clothing, *id.* ¶¶ 12, 24–25, and both sell that clothing on their websites, *id.* ¶¶ 14, 20–22. Plaintiff also alleges defendant attempted but failed to register the trademark "GEARHEAD OUTFITTERS" three times and it failed because of the likelihood of confusion with plaintiff's

mark. *Id.* ¶¶ 31–34, 36–39.  This is sufficient at the pleading stage.  *See, e.g.*, *Shake 'N Buns, Inc. v. California Burger Express, Inc.*, No. 23-01711, 2024 WL 2853340, at *4 (E.D. Cal. June 5, 2024) (holding similarly where plaintiff alleged the marks share the same word, has similar design features and are used on similar goods); *Solofill, LLC v. Rivera*, No. 17-02956, 2017 WL 5953105, at *2 (C.D. Cal. Oct. 16, 2017) (allegations of similarity of the marks and proximity of goods sufficient).

That defendant asserts it sells some apparel bearing third-party brands does not preclude relief for plaintiff.  "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products."  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992).  As a result of defendant's alleged use of plaintiff's protected mark as defendant's store name, customers may have confused defendant as a source of plaintiff's retail goods and services, even if defendant was selling only third-party branded apparel.  *Cf., e.g.*, *Nordstrom, Inc. v. NoMoreRack Retail Grp., Inc.*, No. 12-1853, 2013 WL 1196948, at *3 (W.D. Wash. Mar. 25, 2013) (proximity of goods weighed in favor of likelihood of confusion when both parties offered third-party brand name products at discounted prices); *Glob. Apogee v. Sugarfina, Inc.*, No. 18-5162, 2018 WL 4945305, at *3 (C.D. Cal. Oct. 10, 2018) ("Because the parties use the same word in connection with the same type of services, they are not obviously dissimilar.  Thus, it is premature to conduct a likelihood of confusion analysis and the marks are related enough to survive a dismissal at this stage.").

Fundamentally, based on the pleadings, this is not a case in which the marks differ so clearly that no infringement is possible.  *Cf., e.g.*, *Knowles v. Spin Master, Inc.*, No. 18-5827, 2018 WL 6131207, at *4 (C.D. Cal. Nov. 2, 2018) ("Rusty Rivets" and "Rivets & Ruby" not confusingly similar despite sharing the word "Rivets").  Nor is this a case in which the goods are unrelated.  *See Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996) ("If the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the complaint should be dismissed.").

Plaintiff has sufficiently alleged likelihood of confusion. Whether plaintiff can ultimately prove that allegation is a question for another day. *See, e.g.*, *Dita, Inc. v. Mendez*, No. 10-6277, 2010 WL 5140855, at *5 (C.D. Cal. Dec. 14, 2010) ("When a federal court reviews the sufficiency of a complaint, . . . [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). Defendant's motion to dismiss on this ground is also denied.

## V. MOTION TO STRIKE

Defendant alternately moves to strike portions of plaintiff's first amended complaint. *See* Mot. at 2. A "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and should not be granted unless it is "clear that the matter to be stricken could have no possible bearing on the litigation." *Walters v. Fid. Mortg. of Cal.*, 730 F. Supp. 2d 1185, 1196 (E.D. Cal. 2010) (citation omitted). "The moving party has the burden to show that the allegations it hopes to strike as irrelevant will cause 'specific undue prejudice.'" *Weizman v. Talkspace, Inc.*, No. 23-00912, 2023 WL 8461173, at *2 (N.D. Cal. Dec. 6, 2023) (citation omitted); *Johnson v. Exec. Protective Agency K-9 & Investigative Servs., Inc.*, No. 07-0570, 2008 WL 11337353, at *2 (S.D. Cal. Sept. 19, 2008) (holding similarly).

Defendant offers no analysis or argument to support its motion to strike. *See* Mem. at 11–12, 24; Reply at 15. It does not explain how the allegations it seeks to strike are "immaterial, impertinent, or scandalous." *See* Mem. at 24. The motion to strike is denied.

## VI. CONCLUSION

For the reasons above, defendant's motion to dismiss or strike is **denied.**

This order resolves ECF No. 14.

IT IS SO ORDERED.

DATED: August 13, 2024.

CHIEF UNITED STATES DISTRICT JUDGE